# EXHIBIT A

# ROA-
# ITEM 478

ROBERT CARTER OLSON
PINAL COUNTY ATTORNEY (00003800)
Richard T. Platt (87188) Chief Deputy
Sylvia Lafferty (87183) Deputy
P.O. Box 887
Florence, AZ 85232-0887
(520) 866-6271

FILED

06 FEB 17  AM 9: 21

PATRICIA A. NOLAND
CLERK SUPERIOR COURT
BY _Mark Allay_
DEPUTY

Attorneys for the State

IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

IN AND FOR THE COUNTY OF PIMA

| | |
|---|---|
| THE STATE OF ARIZONA,<br><br>          Plaintiff,<br><br>v.<br><br>BRADLEY SCHWARTZ and<br>RONALD BRUCE BIGGER,<br><br>          Defendants. | No. CR-2004-3995<br><br>**MOTION TO PRECLUDE<br>DEFENDANT'S EVIDENCE<br>OF 'CHARACTER'**<br><br>(Assigned to the Honorable<br>Nanette Warner) |

The State  of Arizona, by and through its deputy undersigned, hereby

moves this Court to preclude certain evidence of the defendant's character as

more fully set forth herein.

**FACTS**

Defendant Bradley Schwartz has recently disclosed of his intent to call

certain witnesses in defense of the two charges pending against him:  first degree

murder and conspiracy to commit first degree murder. The list of witnesses was

recently disclosed as "witnesses will be testifying regarding contact they had with

the Defendant in his capacity as a medical doctor." (Notice of Trial Witnesses

1

Pursuant to Rule 15.2(b), dated January 25, 2006, page 2).  He alleges, in his

Notice:

> "This testimony will be used, in part, as character evidence, however, will principally be offered to refute the theory of the State that the Defendant caused the murder of the victim, Dr. Brian Stidham, as the result of his inability to acquire patients and have an on-going successful medical practice, for which he blamed Dr. Stidham.  These witnesses will testify that the Defendant was an excellent doctor and the fact that he materially affected their lives and their children's predicated on his excellent medical services. This will be the thrust of the testimony of these witnesses."

The apparent issue is whether defendant's skills as a medical doctor are **relevant** as to whether he committed the crime of first degree murder, as an accomplice, and whether he committed the crime of conspiracy to commit first degree murder.  Additionally, if the Court will allow such testimony, is the State allowed to call rebuttal witnesses that would testify that the defendant's medical care was unsatisfactory?

## LAW

The law of relevance is stated in Rule 401, Arizona Rules of Evidence.  The Rule holds: ""Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  This rule has been interpreted by the Arizona courts: "The test for relevance is whether the offered evidence tends to make the existence of any fact in issue more or less probable."  *State v. Fulmanente*, 193 Ariz. 485, 502, 975 P.2d 75, 92 (1999). "Evidence is relevant if it has any basis in reason to prove material fact in issue." *State v. Kennedy*, 122 Ariz. 22, 25, 592 P.2d 1288, 1291 (App. 1979).  "A

2

fundamental requirement for admission of evidence is that it be relevant.   To be relevant, evidence must have "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *State v. Fisher*,  141 Ariz. 227, 244, 686 P.2d 750, 767 (1984), certiorari denied 469 US 1069, denial of post conviction relief reversed in part 152 Ariz. 116, 730 p.2d 825, appeal after new trial 176 Ariz. 69, 859 P.2d 179.

Here, the defendant's competency as a medical doctor is not in question nor is it an element of either crime the defendant stands charged.  The State will concede the defendant is a competent medical doctor with the necessary skills to practice in his area of medical expertise and possessed the ability to attract and sustain a medical practice.  In fact, the State intends to call, at least, one of his prior patients during its case-in-chief.  Whether the defendant was a competent physician or not is not an issue that needs to be determined by the jury.  The proffered evidence as to whether the defendant performed competent medical skills upon his former patients is simply not relevant to this case.  His "character" as a competent medical practitioner is not a material issue.   Additionally, this Court should exclude evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading to the jury, or by considerations of undue delay, waste of time or needless presentation of cumulative evidence." Rule 403, Arizona Rules of Evidence.

Here, the State does not contest whether the defendant was a competent medical practitioner.   The only use of this evidence is nothing more than an attempt to confuse the jury  and allude that the defendant could not have

3

committed the crimes because he was a competent medical doctor who performed extraordinary skills on a few, selected patients. This type of evidence is improper.

The other tact the defendant is using to call these character witnesses appears to be that the witnesses will refute the "the theory of the State that the Defendant caused the murder of the victim, Dr. Brian Stidham, as the result of his inability to acquire patients and have an on-going successful medical practice, for which he blamed Dr. Stidham." The defendant has noted a financial expert who will, allegedly, testify about the financial health of the defendant's medical practice, both before and after his license suspension. It is anticipated that this expert will give evidence that the defendant's medical practice was successful prior to the departure of Dr. Stidham. The State anticipates the defendant will produce evidence that his medical practice:

1.    Benefited financially from the added practice of Dr. Stidham for the year that he practiced in the defendant's medical office;

2.    The defendant's medical practice suffered significant financial loss after the defendant's medical license was suspended and the departure of Dr. Stidham from his practice;

3.    From November, 2002 to August, 2003, the defendant had to close his medical practice due to his inability to practice medicine and the lack of sufficient income, caused by his license suspension and the departure of Dr. Stidham; and

4

4.     After the defendant's medical license was reinstated in August, 2003, the defendant was able to re-establish his medical practice and produce an income to sustain the practice.

Again, the State does not contest the fact that the defendant was able to re-establish his medical practice after his completing a couple of in-house drug rehabilitation programs and the reinstatement of his medical license.   Therefore, what is the relevant purpose of the defendant's proffered evidence?  It does not corroborate what the financial expert is expected to testify to.    At best, this evidence is 'cumulative' evidence.  The Division 2 Court of Appeals opined:

> "There is a difference between evidence which is "corroborative" and evidence which is "cumulative".  Corroborative evidence tend to corroborate or to confirm, whereas cumulative evidence merely augments or tends to establish a point already proven by other evidence"
> *State v. Kennedy*, 122 Ariz. 22, 26, 592 P.2d 1288, 1292 (App. 1979).

The Court has the discretion to determine the relevancy and admissibility of evidence.  *State v. Turner*, 92 Ariz. 214, 220, 375 P.2d 567 (1962): *State v. Davolt*, II, 207 Ariz. 191, 208, 84 P.3d 456, 473 (2004).  Additionally, under Rule 403, Arizona Rules of Evidence, the Court can exclude evidence, including relevant evidence, if it is a "needless presentation of cumulative evidence".  At best, the proffered 'character' evidence is nothing more than a confusing exercise in smoke and mirrors to obscure the real issues of this case.  The defendant's medical competency and his alleged financial ability to earn a living are not contested issues in this case.

**CONCLUSION**

Based upon the foregoing, the state requests this Court to preclude defendant Schwartz from calling witnesses that may offer alleged character evidence concerning his medical competency  and whether he could attract patients to his practice.

RESPECTIVELY SUBMITTED on this 13th day of February, 2006.

ROBERT CARTER OLSON
PINAL COUNTY ATTORNEY


By _____
Richard T. Platt
Chief Criminal Deputy County Attorney

6

# ROA-ITEM 489

ROBERT CARTER OLSON
PINAL COUNTY ATTORNEY (00003800)
Richard T. Platt (87188) Chief Deputy
Sylvia R. Lafferty (87183) Deputy
P. O. Box 887
Florence, AZ 85232
(520) 866-5558
Attorneys for the State

FILED IN COURT

_February 21, 2006_
PATRICIA A. NOLAND, Clerk

_W M_
                                  Deputy

IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

IN AND FOR THE COUNTY OF PIMA

| | | |
|---|---|---|
| THE STATE OF ARIZONA, | ) | NO. CR-2004-3995 |
| | ) | |
| Plaintiff, | ) | MOTION TO PRECLUDE |
| | ) | THIRD PARTY DEFENSE RE: |
| v. | ) | DENNIS WALSH |
| | ) | |
| BRADLEY SCHWARTZ and | ) | |
| RONALD BIGGER, | ) | |
| | ) | |
| Defendants. | ) | (Judge Warner) |
| | ) | |

The State of Arizona, by and through its deputy undersigned, and moves this Court to preclude the Defendant from offering evidence and/or argument concerning a "third-party culpability defense." Specifically, the State seeks an order precluding Defendant from making statements, eliciting testimony, presenting evidence, or making arguments to the jury suggesting that Dennis Wayne Walsh, not Defendant, had the ability, opportunity, and/or motive to commit or may have committed the crimes charged in this case, as more fully set forth herein.

**FACTS**

As early as December, 2004, Defendant informed the State he had a third-party culpability defense involving Daphne Stidham. The State has filed a Motion to Preclude that

defense, and incorporates that Motion by reference.

In February, 2005, Defendant first informed the State about the third-party culpability defense involving Dennis Walsh. (See Exhibit A).

Most recently, Defendant has informed the State of his intention to call all the detectives, victims and witnesses, and the prosecutor in Mr. Walsh's 18 cases. (See Exhibit B).

In the interim, several of Defendant's witness have recanted their original statements concerning Mr. Walsh's involvement. The State has found witnesses who would testify that Defendant tried to enlist their aid in framing Mr. Walsh.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    Analysis.

A defendant cannot present a "third-party defense" unless the defendant shows both that the evidence is relevant to his own culpability and that the risk of prejudice, confusion, or waste of time does not substantially outweigh its probative value. Third-party evidence is not relevant unless it somehow connects the third person to the crime. It is not enough simply to show vague suspicions or to show that a third party had motive, ability, or opportunity to commit the crime.

The appropriate analysis of third-party defenses was set out by the Arizona Supreme Court in *State v. Gibson*, 202 Ariz. 321, 323, 44 P.3d 1001, 1003 (2002):

> Initially, the court must determine if the proffered evidence is relevant. 'Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probably or less probable than it would be without the evidence.' Rule 401. 'All relevant evidence is admissible....Evidence

2

which is not relevant is not admissible.' Rule 402. Once the evidence
is determined relevant, it is admissible unless 'its probative value is
substantially outweighed by the danger of unfair prejudice, confusion
of the issues, or misleading the jury, or by considerations of undue delay,
waste of time, or needless presentation of cumulative evidence.' Rule 403.
[cite omitted] also see *State v. Tucker*, 205 Ariz. 157, 68 P.3d 110 (2003).

The trial court retains the discretion to exclude evidence if it raises, "only a possible

ground of suspicion against another." *State v. Prion*, 203 Ariz. 157, 52 P.3d 189 (2002);

*State v. Dann*, 205 Ariz. 557, 74 P.3d 231 (2003).

## II.    Confessions of Dennis Walsh.

Any confessions to the carjacking and murder of Dr. Stidham allegedly made by

Dennis Walsh are inadmissible.   Arizona Rules of Evidence, Rule 804(b)(3) states in

pertinent part:

### A. Rule 804. Hearsay Exceptions; Declarant Unavailable...

(b) Hearsay exceptions. The following are not excluded by the hearsay
rule if the declarant is unavailable as a witness:...

(3) Statement against interest. A statement which at the time of its
making was so far contrary to the declarant's pecuniary or proprietary
interest, or so far tended to subject him to civil or criminal liability, ...
That a reasonable person in the declarant's position would not have
made the statement unless believing it to be true. A statement tending
to expose the declarant to criminal liability and offered to exculpate
the accused is not admissible unless corroborating circumstances
clearly indicate the trustworthiness of the statement.

In *State v. Harrod*, 200 Ariz. 309, 26 P.3d 492 (2001), the defendant attempted to

introduce the confession of a California death row inmate to the murder with which

defendant was charged the (murder of Jeanne Tovrea). The inmate, Majors, had supposedly

confessed to another death row inmate (Calo). Majors denied making the confession or

3

committing the murder. In addition, other information supplied by Calo was not consistent and could not be corroborated. As the *Harrod* court observed, Rule 804 has three requirements for the admission of the "confession" to exculpate a defendant. Defendant Schwartz cannot meet these requirements.

First, Dennis Walsh is not unavailable. Second, Mr. Walsh denies confession to or committing the murder of Dr. Stidham and taking the doctor's car. Third, there are no corroborative circumstances which "clearly indicate the trustworthiness of the statement, " Rule 804(b)(3).

The State is aware of only one person who claims to have heard Mr. Walsh confess–that is Defendant's former cellmate, Brandon West. Mr. West has subsequently recanted that statement, saying he was put up to blaming Mr. Walsh by Defendant. Mr. West's attorney has advised that he will not testify. Even if another Pima County Jail inmate/former inmate were to say he heard Mr. Walsh confess, that statement would be tainted by Defendant's machinations with Mr. West.

## B.    Third-party defenses/confessions are viewed with suspicion.

"Because evidence of a third-party's culpability is easily fabricated, such evidence is capable of raising a reasonable doubt only if it has some measure of reliability." *State v. Taylor*, 2002 WL 1539766 (Ariz. App. Div 2).

In its comment to Federal Rule Evidence 804, the Advisory Committee noted:

> The refusal of the common law to concede the adequacy of a penal interest was no doubt indefensible in logic....[B]ut one senses in the decisions a distrust of evidence of confessions of third persons offered to exculpate the accused arising from suspicions of fabrication either of the fact of the making of the confession or in its contents, enhanced in either instance by the

4

required unavailability of the declarant....The requirement of corroboration is included in the rule in order to effect an accommodation between these competing considerations. When a statement is offered by the accused by way of exculpation, the resulting situation is not adapted to control by rulings as to the weight of the evidence, and hence the provision is cast in terms of a requirement preliminary to admissibility.

II.      **No Evidence of Walsh's Involvement.**

In Exhibit A, Defendant informed the State that Doug Morguia had information that Walsh being involved in carjackings and possibly having stolen Morguia's knife. Mr. Morguia's whereabouts are unknown, and he does not appear on Defendant's witness list.

Eduardo Aguirre-Nebrinsky supposedly knew Walsh was involved in stolen cars and that Walsh was trying to sell a white Lexus. Mr. Aguirre-Nebrinsky subsequently recanted his earlier statements as untruthful and made at Defendant's behest. He does not appear on defendant's witness list.

Mr. Walsh has been excluded as a DNA donor on a number of items (as was Defendant Schwartz) from the murder scene and Stidham's car. (See Exhibit D). There is no evidence placing Walsh at or near the crime scene on October 5, 2005.

Jennifer Dainty, clerk at the convenience store at River Road and First Avenue, had identified Ronald Bigger as the "man in scrubs" in her store between 6:00 and 7:00 p.m. on October 5, 2004. Ms. Dainty is familiar with photos of Mr. Walsh, since he robbed another convenience store where she also worked.. Ms. Dainty is not confused about the identity of the "man in scrubs."

III.     **Improper Character Evidence.**

Defendant seeks to introduce evidence of Dennis Walsh's crimes to which he pled

guilty (See Exhibit C).  The purpose of this evidence is to show the jury that, if Mr. Walsh committed other crimes, he probably committed this one.   Arizona Rules of Evidence, Rule 404(b) states in pertinent part:

> **(b) Other crimes, wrongs, or acts**.  Except as provided in Rule 404(C) evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.

While there are appropriate uses for other acts evidence, they do not apply in this case.

Further, the crimes for which Mr. Walsh was convicted bear only the faintest connection to the crimes in this case.   No offense for which Mr. Walsh was convicted involved injury to a victim.  Only two were  carjackings, and only one involved a weapon (gun).  Only one of Mr. Walsh's offenses involved a knife; other offenses involved a gun, or no visible weapon at all. None of the offenses involved closed businesses.  Mr. Walsh demanded money, but Dr. Stidham's wallet with money and credit cards was left by his body.  Walsh did not wear scrubs in the commission of those crimes.  Although some of the crimes were near the area of Dr. Stidham's murder, some were not.

## IV.    Rule 403.

Arizona Rules of Evidence, Rule 403 states:

> **Exclusion of Relevant Evidence on Grounds of Prejudice, Confusion, or Waste of Time.**
>
> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste f time, or needless presentation of cumulative evidence.

The State (without conceding that the Walsh third-party evidence is relevant) can conceive of no greater catalyst for confusion, misleading, delay and waste than Defendant's desire to inform the jury of all of Mr. Walsh's offenses. "Walsh crimes" would become a trial-within-a-trial consuming several trial days.

In addition, as stated above, there are witness who originally inculpated Walsh, and have now recanted. The State has disclosed two witnesses, Carroll Sanders and Wade Tackett, who would testify that Defendant tried to involve them in accusing Dennis Walsh while all were house at the Pima County Jail. After Sanders and Tackett were disclosed, Defendant disclosed two more inmates Stagner and Wilson) to say that Tackett and Sanders had animus toward Defendant and wanted to get back at him. It is easy to see how the parade of inmates or former inmates–many convicted felons–could totally divert the jury's attention from the matter at bar and lead to confusion and waste of time.

### CONCLUSION

There is simply no evidence linking Dennis Walsh to the murder of Dr. Stidham. Defendant's viable third-party defense must offer more than speculation. *State v. Tucker*, *supra*, provides guidance as to what type and quantity of evidence is sufficient to permit a third-party defense:

> The evidence Tucker offers that Kozakiewicz might be the killer is the following: He knew all of the victims in this case; he did not like Roscoe; he did not like blacks; [footnote omitted] he had spoken derogatorily of Roscoe and blacks in general; he had access to guns; he gave Tucker one of this three sets of handcuffs; and he had pled guilty to another murder that occurred two months before the murders in this case....
>
> *Prion* held that evidence that another person committed the crimes is admissible if it 'supports the notion that [the third party] had the *op-*

7

*portunity and motive* to commit this crime.

After describing the third-party evidence in *Prion,* the court said:

> The evidence Tucker offers only minimally indicates that Kozakiewicz
> had motive, albeit the same motive as perhaps dozens of other people who
> were acquainted with the Merchant family. But unlike in *Prion*, Tucker
> does not point to any evidence showing that Kozakiewcz had the
> opportunity to kill the Merchants. Without some evidence tending to connect
> Kozakiewcz to the crime scene, Tucker's speculation that Kozakiewcz
> might have been the killer is arguably irrelevant, and therefore, would
> likely have been found inadmissible.

There is no doubt that Dennis Walsh committed a number of crimes. However, there
is no evidence that Walsh had anything to do with the crimes with which Defendant is
charged.

The evidence Defendant proposes to present is irrelevant. Assuming *arguendo*, it
were relevant, the evidence is inadmissible.

Even assuming the evidence were relevant and otherwise admissible, it should be
precluded because of its potential to confuse and mislead the jury, and delay the progress of
the trial.

Finally, there is evidence that Defendant tried to manufacture evidence and witnesses
against Dennis Walsh. His efforts should not be rewarded.

WHEREFORE, the State moves this court to preclude Defendant from presenting
witnesses, evidence, or argument that Dennis Wayne Walsh is the real killer of Dr. Stidham,
or was involved in the theft of Dr. Stidham's Lexus.

\ \ \

\ \ \

8

DATED this ⎡⎦ day of February, 2006.

ROBERT CARTER OLSON
PINAL COUNTY ATTORNEY

Sylvia R. Lafferty
Deputy County Attorney

Copies of the foregoing mailed/faxed
this ⎡⎦ day of February, 2006 to:

The Honorable Nanette Warner
Pima County Superior Court
110 W. Congress
Tucson, AZ 85701
520-740-8313

Brick P. Storts, III
271 N. Stone
Tucson, AZ 85701
520-882-5785
Attorney for Defendant Schwartz

Jill E. Thorpe
177 North Church, Ste. 305
Tucson, AZ 85701
520-791-9406
Attorney for Defendant Bigger

9

EXHIBIT A

# BARTON & STORTS

BRICK P. STORTS, III*

*A PROFESSIONAL CORPORATION

ARIZONA STATE BAR CERTIFIED
CRIMINAL LAW SPECIALIST

271 NORTH STONE AVENUE
TUCSON, ARIZONA 85701-1526
(520) 882-2802
FAX (520) 882-5785

MICHAEL BARTON

DECEASED

February 11, 2005

Sylvia Lafferty
Pinal County Attorney's Office
P.O. Box 887
Florence, AZ 85232

RECEIVED

FEB 14 2005

PINAL COUNTY ATTORNEY

RE:   *State v. Bradley Schwartz, et al.*

Dear Sylvia:

First, thank you for the opportunity to provide input prior to your office making a decision about whether to file a death penalty notice in this case. Presumably, before you file such a notice your office would want to be absolutely sure that the person in custody is, in fact, the person responsible.

It has come to our attention that a person that should be focused on is presently incarcerated at the Pima County Jail. His name is Dennis Duane Walsh. We are aware of a number of witnesses, who are also incarcerated, who have information connecting Mr. Walsh to the murder of Dr. Stidham.

Our investigator has spoken to an individual by the name of Eduardo Aguirre-Nebrinsky. This conversation, as well as the others, took place with the permission of the attorneys representing each witness. Mr. Nebrinsky told our investigator that he knew who Dennis Walsh was. He also said that on or about October 6, 2003, he was at the Bellevue Apartments. People involved in the meth subculture hangout at this location. Mr. Nebrinsky saw Dennis Walsh there with a black and white male. While there, Mr. Nebrinsky learned that Mr. Walsh had carjacked a person in scrubs. Mr. Nebrinsky thought that the person in scrubs was either a medical technician or a nurse. Mr. Walsh was attempting to sell a White Lexus. Since Mr. Nebrinsky had, on at least two other occasions, been the middle man in arranging the sale of stolen vehicles, he was asked to help dispose of the White Lexus. Mr. Nebrinsky actually saw the White Lexus parked at the Bellevue Apartments. He has indicated that he is willing to show our investigator exactly where the White Lexus had been parked. Mr. Nebrinsky also indicates that one or more other persons may have also heard the conversations by Dennis Walsh involving, the carjacking of the person in scrubs and Mr. Walsh's interest in selling the White Lexus. This interview took place on January 27, 2005.

Sylvia Lafferty
RE:   *State v. Schwartz/Biggers*
February 11, 2005

On January 17, 2005, our investigator spoke with Doug Morguia. Mr. Morguia is also incarcerated. Mr. Morguia indicated that Dennis Walsh is known as individual who becomes involved in carjackings. Mr. Walsh also frequents the Bellevue Apartments. Mr. Morguia had a knife which he believes was stolen by Dennis Walsh. Mr. Morguia described the knife and drew a picture for our investigator. He is not sure whether Mr. Walsh actually stole the knife but is concerned that his fingerprints and/or DNA might be being on the knife if it is located. Mr. Morguia has indicated a willingness to introduce our investigator to some of the "meth crowd" who knew Dennis Walsh.

On February 7, 2005, our investigator spoke to a person by the name of Brandon West. Mr. West is in custody for sex crimes offenses and is apparently facing a significant period of time. Sometime in November, 2004, Mr. West was at a Circle K near Ruthruff and Romero Roads. He met a caucasian male by the name of Mike. He also provided our investigator with a description of Mike. Mike had numerous tattoos. Mike was looking at and inquiring about Mr. West's dirt bike. Mike invited Mr. West to attend a party which was to take place within a day or two. Mr. West actually went back, met Mike and went to the party. The party was taking place at a residence. Mr. West drew a diagram of the area. While at this location, Mr. West was walking by one of the rooms when he overheard a man who he learned to be Dennis Walsh talking about he had stabbed some guy in scrubs and taken his car to the compound near the Bellevue Apartments. Mr. Walsh was bragging about what he had done. This compound is apparently utilized as a chop shop of some sort. Mr. Walsh then left the car at some other location because the compound people did not want to take the car.

In addition to these three witnesses, there are at least two others who have indicated that they have information about Mr. Walsh and are willing to be interviewed. Thus far, their attorneys have refused to allow an interview to take place. Clearly, if it becomes necessary, Dr. Schwartz and Mr. Biggers will attempt to subpoena these individuals to provide additional information concerning Mr. Walsh and the murder of Dr. Stidham.

I am enclosing a copy of a newspaper article about Mr. Walsh being arrested after a high speed chase. It appears that Mr. Walsh has been involved in several carjackings, the first being on or about October 3, 2004. It seems that Mr. Walsh would engage in a carjacking every two or three days. The carjacking on October 3, 2004, was in an area nearby where Dr. Stidham was found murdered. Other carjackings appear to have taken place on or about October 10, 2004, near Dr. Stidham's office, October 12, 2004, October 15, 2004 and October 17, 2004. The only gap appears to be between October 3, 2004 and October 10, 2004. This gap is filled in if one considers the murder of Dr. Stidham which occurred on October 5, 2004.

2

Sylvia Lafferty
RE:   *State v. Schwartz/Biggers*
February 11, 2005

Obviously, your office could take the position that since these witnesses are presently incarcerated and facing criminal charges, they are offering concocted stories and should not be believed. However, careful analysis of what they have to say reveals both a consistency and difference that support a conclusion that each is offering a truthful rendition of what they saw and heard. Moreover, even though their testimony would be helpful to both Dr. Schwartz and Mr. Biggers, it would be damaging to Mr. Walsh who is, by all accounts, a very dangerous individual.

There is little doubt that their testimony will give rise to a very legitimate and persuasive third-party culpability defense pursuant to *Prion* and *Gibson*. Hopefully, raising this defense, will not become necessary, at least not in a capital murder trial. In a footnote, in *State v. Harrod*, 200 Ariz. 309, 26 P.3d 492 (2001) (vacated pursuant to *Ring* and *Harrod v. Arizona*, 536 U.S. 953, on remand, 204 Ariz. 567) the court said as follows:

> While beyond a reasonable doubt maybe an adequate standard for the guilt phase of a capital case, absolute certainty may be a more appropriate standard for the imposition of the death penalty.

I hope your office agrees that "absolute certainty" should be the standard in deciding whether or not to seek the death penalty. I would respectfully submit that the evidence concerning Mr. Walsh, at the very least, makes it impossible to be absolutely certain that Dr. Schwartz or Mr. Biggers had anything to do with the murder of Dr. Stidham. I am enclosing a third-party culpability pleading. I will not file this pleading until after your office has decided whether or not it will be filing a notice of intent to seek the death penalty.

I am also enclosing a motion for additional discovery. I am not filing this motion at the present time. Our local rule requires that we attempt to resolve any disclosure issues prior to filing a motion. Please review our motion for disclosure and advise concerning whether or not you will comply with the various requests being made. If so, there will be no need to file this motion. If not, we will file the motion and ask that it be heard.

The single most significant issue at the present time is whether your office will seek to have Dr. Schwartz, and/or Mr. Biggers, executed in the event either is convicted. As you know, not every first degree murder conviction should result in the imposition of the death penalty. Based upon the State's disclosure received thus far, as well as the third-party culpability evidence presently available, I would urge your office not to file a notice of intent to seek the death penalty.

3

Sylvia Lafferty
RE:   *State v. Schwartz/Biggers*
February 11, 2005

   If anything further is required, please advise.  Please let me know your decision at your earliest convenience.

     Sincerely,

     BARTON & STORTS, P.C.

     Brick P. Storts, III

BPS/ch
enclosure
c.c.  Steve Sonenberg

4

EXHIBIT B

# BARTON & STORTS

**BRICK P. STORTS, III ***

**• A PROFESSIONAL CORPORATION**
**ARIZONA STATE BAR CERTIFIED**
**CRIMINAL LAW SPECIALIST**

271 NORTH STONE AVENUE
TUCSON, ARIZONA 85701-1526
(520) 882-2802
FAX (520) 882-5785

**MICHAEL BARTON**

DECEASED

January 16, 2006

Sylvia Lafferty
Richard Platt
Pinal County Attorney's Office
P.O. Box 887
Florence, AZ 85232

FILED
JAN 1 9 2006  *SRL*
PINAL COUNTY ATTORNEY

     RE:   *State v. Schwartz*

Dear Sylvia and Richard:

     Hopefully, we can reach an agreement that will save us a great deal of time at trial. As you know, we intend to raise a third-party culpability defense with respect to Dennis Wayne Walsh. I had hoped that we would be able to present information concerning Mr. Walsh's offenses, at least those to which he entered pleas of guilty, through Jonathan Mosher of the Pima County Attorney's Office. It is my understanding from Mr. Peasley that Mr. Mosher objected to having to read the disclosure, or his notes, simply in order to be able to testify about the dates, times, places, names of victims and the types of weapons that were used in the various Walsh counts. I cannot imagine the court will not allow us to present this information, given the circumstances. Assuming that we are allowed to do so, I am asking that you consider entering into a stipulation or agreement concerning the manner in which this evidence will be presented.

     If we cannot reach an agreement, I would have no choice but to start calling numerous detectives, all of the named victims and other witnesses who might be necessary in order to establish the date, time, place, name of the victim and type of weapon used in each of these counts. Then, I would have to call Mr. Mosher in order establish that the Defendant Walsh entered pleas of guilty to all of these counts. Rather than taking up valuable trial time in order to do so, I am suggesting that we reach an agreement that will allow me to present this information with a single witness, Mr. Mosher.

     I will have a chart prepared concerning Mr. Walsh's offenses, at least those to which he entered a plea of guilty, and make that available to you some time prior to trial. This will give you an opportunity to review the chart for accuracy and decide whether or not you are willing to allow me to present the chart, together with the sought-after information with a single witness. If you are unwilling to accept this manner of presentation, please let me know so that I can make the necessary arrangements to have the Walsh witnesses subpoenaed.

Sylvia Lafferty
Richard Platt
RE:    *State v. Schwartz*
January 16, 2006
Page 2

If you are agreeable, I will have the chart prepared, together with the information I would present concerning the various counts, and make that available to you no later than February 1, 2006, which would give you several weeks to review the chart and make any suggested changes.

Please advise.

Sincerely,

BARTON & STORTS, P.C.

Brick P.  Storts, III

BPS/ch

2

EXHIBIT C

Dennis Walsh

October 3, 2004 - Robbery of Michaels  3161 West Irvington

    -Suspect approached the counter and placed a note on top of the counter which
        read "this is a hold up, give me all of your money, don't fuck up, don't call
        anybody"
    -Employee gave the suspect the money from the register

October 10, 2004 - Robbery of Circle K  4160 North 1st Avenue

    -Suspect came to the counter and demanded all the money in the store
    -Clerk thought it was a joke
    -Suspect demanded the clerk to open the drawer and give him all the money
    -As suspect was demanding the money, asked for a pack of camel filter cigarettes

October 15, 2004 - Armed Robbery  Chevron 1285 West Ajo Way

    -Suspect entered the store and pointed a 9mm hand gun at the clerks
    -Suspect demanded that he open the register and give them the money
    -Suspect had a blue semi automatic handgun

October 15, 2004 - Car jacking  4541 West Valencia

    -victim as approached by suspect.   Suspect asked for a ride, but the victim told
        him no.
    -Suspect pulled out possibly a 9mm hand gun
    -Suspect pointed the gun at the victim and told him to give him the car (white
    truck)
    -Victim's boss came out and suspect pointed the gun at him too
    -Suspect said "give me the truck"
    -Boss said the keys were in it
    -Suspect got into the vehicle and peeled out fo the dirt parking lot

October 17, 2004 - Robbery of Michaels  4070 North Oracle Road

    -Approached the register with a hand basket
    -placed the basket on the counter, but left one hand holding it
    -Employee asked the man if that would be all before she started scanning the
        items
    -Suspect said "No, I'm robbing you" as he made a gesture and pulled up his shirt
    -Suspect showed her a hand gun that was between his waist band
    -Suspect never took the gun from the waist band
    -Employee emptied the drawer into the basket
    -Suspect took basket and left the store

October 18, 2004 - Robbery of Walgreens - 3180 North Campbell Avenue

    -Walked up to counter with four toys and asked for cigarettes
    -Told the clerk to put the toys in the bag and give him the money.
    -Put hands on waist, but did not show her a weapon or say he had a weapon -
    implied

October 19, 2004 - Robbery of Michaels  1161 West Irvington Road

    -Suspect walked up to register # 3 with a shopping basket and notepad with a note
        written in orange print
    -Note said "very quietly open your drawer and give me the cash.  I am armed."
    -Employees handed the suspect an undetermined amount of cash and he left the
        business

October 20, 2004 - Robbery of Walgreens - 3910 East 22nd Street

    -Walked in and picked up a blue shopping basket.
    -Walked around the store and filled the basket with various items
    -Placed basket on the counter and said, "Aww, shit man.  I am gonna have to rob
        you."
    -Told the employee that he was sick and needed a fix.
    -Lifted his shirt and displayed the handle of a gun in his waist band
    -Employee stepped around to the right side of the counter
    -Said, "aww, man you stepped on it, didn't you?
    -Walked out without any money

October 20, 2004 Armed Robbery  Quicks Mart/ Mobil 1850 East Prince Road

    -Suspect walked up to the counter and told the clerk "just give it to me, don't
        make me grab it."
    -Suspect lifted up his black sweat shirt and revealed the pistol grip of a gun
    -Suspect did not pull out what appeared to be a gun, only revealed the grip
    -Suspect then left the business

October 23, 2004 - Armed Robbery  Quicksmart  1850 East Prince Road

    -Suspect came up and handed the clerk a candy bar and asked for a pack of
        cigarettes
    -As clerk reached around for the cigarettes, the suspect pulled up his shirt to
        expose his waste and showed the clerk a back handled handgun
    -Suspect said "Dude just give me the money or your gone"
    -Clerk handed the suspect the money and the suspect took the candy bar and
        cigarettes and left the store

October 23, 2004  Quik Mart  4910 North First Avenue

    -Suspect approached the clerk attempting "to check out some items"
    -Suspect handed her a note stating that it was a robbery, he had a gun, and
        demanding the money
    -Clerk convinced the suspect that she did not have any money available
    -Suspect said that "this bullshit" and walked out of the store

October 27, 2004 -  Armed Robbery Quik Mart  1250 East Fort Lowell

    -Suspect entered the store and approached the counter.  Told the clerk "Give me
        the money"
    -Suspect pointed to an automatic handgun at the clerk
    -Suspect also demanded a pack of camels
    -Suspect then left the store

October 28, 2004 - Car jacking - 6500 South 12th Avenue

    -woman putting gas in her car at Conoco Gas station
    -Saw a male sitting on the curb and noticed that he was watching her
    -As finished putting gas in the car, noticed the male run up to the car and sit in the
        driver's seat.
    -Woman ran to the front passenger seat and pulled her daughter out of the car
    -Woman stated that it appeared the male was trying to push the daughter out of
        the car
    -Male drove away in the car

October 28, 2004 -   Robbery  C & T Oil  2710 North 1st Avenue

    -Suspect entered the store and approached the register
    -Suspect was calm
    -Suspect asked employee "What is your policy if you get robbed?"
    -Employee did not know - suspect said "Well you're gonna get robbed"
    -Suspect said "Would you put your life on the line for this money, it's not even
        yours?  I'm sick, just give me the money"
    -Suspect then pulled out a folding knife with approx a four inch blade
    -Told employee, "c'mon man, you don't want me to cut you"
    -Employee gave him an undisclosed amount of cash
    -Suspect asked for a pack of camel filters
    -employee gave the suspect a pack of camel filters 100's.  Suspect handed the
        cigarettes back and told the employee that he did not want the 100's.

December 23, 2004 - Armed Robbery of Family Dollar Store  707 East Fort Lowell Road

    -Suspect entered the store and approached the employee at the register
    -Suspect acted as though he was going to pay for some items

-Suspect told the employee "I am going to rob you"
-Suspect put his right hand in his pocket and the employee heard what sounded
    like two metal objects hitting each other
-Employee gave suspect the money and suspect took the money and items he was
    going to pay for and left the store
-Employee never saw a gun

December 24, 2004  Robbery  Catalina Marts 1850 East Prince

-Suspect came into store wearing a nylon stocking on his head
-Approached the clerk and "I'm not going to hurt you.  Give me the money."
-Clerk told the suspect that she only had $50.00.  It's not worth going to prison
    for"
-Clerk indicated that the suspect never implied or displayed a gun
-Suspect told the clerk to give him the money from under the register
-Suspect also asked for a pack of cigarettes
-Once suspect received money, left the store

December 26, 2004  Robbery   Quick Mart  1850 East Prince

-Suspect said "I'm Back, I'm sick lady...I'm heroin addict"
-Suspect took the money from the hand of the clerk

December 29, 2004 - Armed Robbery   Quik Mart  1204 North Alvernon

-Suspect came into the store and approached the counter
-Suspect demanded a carton of camel filters
-Suspect then slid his right hand from his jacket pocket and the clerk thought he
    saw a butt end of a handgun
-Clerk gave the suspect an open carton of Camel Filters
-Suspect then pointed at the register and had the clerk lift up the drawer.
-Clerk gave the suspect $15.00 from the register
-Suspect left the store

EXHIBIT D

DAD OKP



## ARIZONA DEPARTMENT OF PUBLIC SAFETY

### SCIENTIFIC EXAMINATION REPORT

| | | DR NO. 2004705039 |
|---|---|---|
| **AGENCY** | Pima County Sheriff's Department | Page 1 of 3 |
| **FILE NO.** | 041005401 | |
| **OFFICER** | MURPHY, #1044 | |
| **DATE** | January 19, 2006 | |
| **NAME(S)** | SCHWARTZ, BRADLEY | |
| | BIGGER, RONALD | |

### ITEMS:

| | |
|---|---|
| #LX10A. | Two swabs from mouthpiece of bottle |
| #LX10B. | Two swabs from body of bottle |
| #LX10C. | Two swabs from lid of bottle |
| #LX20A. | Two swabs from sunshade |
| #LX20B. | Two swabs from sunshade |
| #LX20C. | Two swabs from sunshade |
| #LX20D. | Two swabs from sunshade |
| #AA1. | Two buccal swabs from Bradley Schwartz |
| #AA2. | Two buccal swabs from Bradley Schwartz - Evaluated, not analyzed |

### EXAMINATION REQUESTED:

DNA

### RESULTS and CONCLUSIONS:

Preliminary tests were positive for blood on Items #LX20A, #LX20B, #LX20C and #LX20D.

Human DNA was isolated from Items #AA1, #LX10A, #LX10B, #LX10C, #LX20A, #LX20B, #LX20C and #LX20D. The DNA was characterized using the polymerase chain reaction (PCR) at amelogenin and the short tandem repeat (STR) loci D3S1358, vWA, FGA, D8S1179, D21S11,

*Lorraine Heath*

| CUSTODY OF EVIDENCE | | LORRAINE HEATH, #6353 |
|---|---|---|
| | | Criminalist |
| RECEIVED | D.P.S. Property | Central Regional Crime Laboratory |
| DISPOSITION | D.P.S. Property | (602) 223-2857 |

*Accredited by the ASCLD Laboratory Accreditation Board*

*Any notes, photographs, charts, or graphs generated during the examination are retained in the laboratory.*

DAD   CWP



# ARIZONA DEPARTMENT OF PUBLIC SAFETY

## SCIENTIFIC EXAMINATION REPORT

**AGENCY**      Pima County Sheriff's Department

**FILE NO.**    041005401

**OFFICER**     MURPHY, #1044

**DATE**        January 19, 2006

**NAME(S)**     SCHWARTZ, BRADLEY
                BIGGER, RONALD

**DR NO.** 2004705039

Page 2 of 3

D18S51, D5S818, D13S317, D7S820, D16S539, TH01, TPOX and CSF1PO. The previously extracted DNA from Item #DWR1 (see DPS report dated 11/21/05) was also characterized using PCR at these loci.

The DNA profile obtained from Items #LX10A (mouth of bottle) and #LX10C (lid of bottle) does not match the DNA profiles from Items #AA1 (Bradley Schwartz), #DWR1 (Dennis Walsh), #ME19/BSC (David Stidham)*, #DSR1 (Daphne Stidham)* and #RB1 (Ronald Bigger)*. This DNA profile is from an unidentified female source.

Inconclusive or no results were obtained from Item #LX10B (body of bottle) due to data below the reporting threshold. However, Items #AA1 (Bradley Schwartz), #DWR1 (Dennis Walsh), #ME19/BSC (David Stidham)*, #DSR1 (Daphne Stidham)* and #RB1 (Ronald Bigger)* are excluded as contributors to this DNA profile.

The DNA profile from Items #LX20A, #LX20B, #LX20C and #LX20D (swabs from sunshade) matches the DNA profile from Item #ME19/BSC (David Stidham)* at all 14 loci.

Items #AA1 (Bradley Schwartz) and #DWR1 (Dennis Walsh) are excluded as contributors to the DNA profiles previously obtained from Items #EV16-1 (pizza crust), #EV18A (scene "D"), #EV19A (scene "A"), #BV20A (scene "I"), #LX1, #LX2, #LX3, #LX4, #LX5 (exterior of Lexus), #LX21, #LX22, #LX23 (Lexus door frame), #LX31 (upper portion of driver's seat), #LX33 (interior driver's door), #LX34/BS1 (driver's seat), #LX35 (plastic from driver's seat), #LX37 (ignition), #LX38/BS1 (keys), #LX39 (radio knob), #LX40 (emergency brake), #LX41 (passenger seat) and #10WA2 (tissue paper) (see CNR DPS report dated 4/7/05).

*Lorraine Heath* (signature)

CUSTODY OF EVIDENCE

RECEIVED          D.P.S. Property

DISPOSITION       D.P.S. Property

LORRAINE HEATH, #6353
Criminalist
Central Regional Crime Laboratory
(602) 223-2857

*Accredited by the ASCLD Laboratory Accreditation Board*

*Any notes, photographs, charts, or graphs generated during the examination are retained in the laboratory.*

DAO CX-P



# ARIZONA DEPARTMENT OF PUBLIC SAFETY

## SCIENTIFIC EXAMINATION REPORT

**DR NO.** 2004705039

Page 3 of 3

| | |
|---|---|
| **AGENCY** | Pima County Sheriff's Department |
| **FILE NO.** | 041005401 |
| **OFFICER** | MURPHY, #1044 |
| **DATE** | January 19, 2006 |
| **NAME(S)** | SCHWARTZ, BRADLEY |
| | BIGGER, RONALD |

## Y-STR RESULTS

Male human DNA was isolated from Item #AA1.  The DNA was characterized using the polymerase chain reaction (PCR) at the Y-chromosome short tandem repeat (STR) loci DYS456, DYS389I, DYS390, DYS389II, DYS458, DYS19, DYS385, DYS393, DYS391, DYS439, DYS635, DYS392, Y GATA H4, DYS437, DYS438 and DYS448.

Item #AA1 (Bradley Schwartz) is excluded as a contributor to the mixed Y-STR profile previously obtained from Item #LX39 (radio knob - see report dated 7/27/05).

Portions of Items #AA1, #AA2, #LX10A, #LX10B, #LX10C, #LX20A, #LX20B, #LX20C and #LX20D have been retained in laboratory frozen storage.

\* See CNR DPS report dated 4/7/05

LORRAINE HEATH, #6353
Criminalist
Central Regional Crime Laboratory
(602) 223-2857

**CUSTODY OF EVIDENCE**

RECEIVED          D.P.S. Property

DISPOSITION     D.P.S. Property

*Accredited by the ASCLD Laboratory Accreditation Board*

*Any notes, photographs, charts, or graphs generated during the examination are retained in the laboratory.*





### ARIZONA DEPARTMENT OF PUBLIC SAFETY

### SCIENTIFIC EXAMINATION REPORT

**AGENCY**     Pima County Sheriff's Office

**FILE NO.**     041005401

**OFFICER**     MURPHY, #1044

**DATE**     November 21, 2005

**NAME(S)**     SCHWARTZ, BRADLEY
                BIGGER, RONALD

**DR NO. 2004705039**

Page 1 of 1

### ITEMS:

#DWR1.     Two buccal swabs from Dennis Walsh

#DWL1.     Two buccal swabs from Dennis Walsh - Evaluated, not analyzed

### EXAMINATION REQUESTED:

DNA- YSTR

### RESULTS and CONCLUSIONS:

Male human DNA was isolated from Item #DWR1. The DNA was characterized using the polymerase chain reaction (PCR) at the Y-chromosome short tandem repeat (STR) loci DYS456, DYS389I, DYS390, DYS389II, DYS458, DYS19, DYS385, DYS393, DYS391, DYS439, DYS635, DYS392, Y GATA H4, DYS437, DYS438 and DYS448.

Item #DWR1 (Dennis Walsh) is excluded as a contributor to the Y-STR profile obtained from Item #LX39 (see DPS Report dated 7/27/05).

Portions of Items #DWR1 and #DWL1 have been retained in laboratory frozen storage.

*Lorraine Heath*

CUSTODY OF EVIDENCE

RECEIVED          D.P.S. Property

DISPOSITION       D.P.S. Property

LORRAINE HEATH, #6353
Criminalist
Central Regional Crime Laboratory
(602) 223-2857

*Accredited by the ASCLD Laboratory Accreditation Board*

*Any notes, photographs, charts, or graphs generated during the examination are retained in the laboratory.*

# ROA-ITEM 516





MAR 0 2 2006

FILED
PATRICIA NOLAN

06 MAR -2 AM 11:?6

ARIZONA SUPERIOR COURT, PIMA COUNTY

JUDGE: HON. NANETTE WARNER: R. ST. GERMAINE. DEPUTY CASE NO.   **CR20043995**

DATE:      March 1, 2006

STATE OF ARIZONA

VS.

BRADLEY A. SCHWARTZ

---

## R U L I N G

UNDER ADVISEMENT RULING on Motion in Limine re: Hearsay.

The Court has considered the Defendant's motion and State's response and finds as follows:

The Court previously ruled that the statement allegedly made by Ronald Bruce Bigger requesting to use the telephone at the convenience store at 1st Avenue and River Road on the day of the homicide was not hearsay. The Court found it was a statement by a co-conspirator made in the course and furtherance of the conspiracy.

The State seeks to admit the statements by the same person at the convenience store about being at a meeting where pizza was being served and he did not like pizza. The State hopes to prove that the person who made these statements was the same person who that same evening had contact with Dr. Jason Lee (a medical student) at the medical complex where Stidham's office was located. This person pointed out Dr. Stidham's office to Dr. Lee and told "pizza had been delivered there."

The Court agrees with the State that the statement is not being offered to prove that pizza was being served or that the declarant did not like pizza, but to show that the person who made the statement at the convenience store was the same person who spoke with Dr. Lee at the medical complex.

Sandi Simpson
Judicial Administrative Assistant

*2-27-06*

# RULING

Page: 2                           Date:  March 1, 2006                    Case No:  **CR20043995**

---

IT IS THEREFORE ORDERED that the statements allegedly made to the convenience store clerk and Dr. Lee regarding pizza are not hearsay and are admissible.

IT IS FURTHER ORDERED denying the Motion in Limine re: Hearsay.


cc:   Hon. Nanette Warner
      Syliva Lafferty, Esq.
      Richard Platt, Esq.
      Brick Storts, Esq.
      Jill Thorpe, Esq.
      Harold Higgins, Esq.
      Maria Davila, Esq
      Dave Ricker, Community Relations Coordinator
      *Under Advisement Clerk*


                                              _____
                                              Sandi Simpson
                                              Judicial Administrative Assistant

*2-27-06*

# ROA-
# ITEM 517

FILED
PATRICIA A. NOLAND

MAR 0 2 2006

06 MAR -2  AM II: 33

ARIZONA SUPERIOR COURT, PIMA COUNTY

BY: R. ST. GERMAINE, DEPUTY

JUDGE: HON. NANETTE WARNER          CASE NO.   **CR20043995**

                                    DATE:      March 1, 2006

STATE OF ARIZONA

VS.

BRADLEY A. SCHWARTZ

---

# RULING

UNDER ADVISEMENT RULING on State's Motion to Preclude Third Culpability Defense Re: Dennis Walsh.

The Court has considered the State's Motion, Defendant's Response and arguments of counsel. The Court has also reviewed pages one to five of the presentence report regarding offenses of which Walsh was convicted in *State v. Dennis Walsh,* CR20050089 and finds as follows:

## FACTUAL BACKGROUND

The defense seeks to introduce evidence that Dennis Walsh committed this offense. In February 2005, attorney for defendant Schwartz informed the prosecutor he had evidence that tended to show that a Dennis Duane Walsh was responsible for the murder. The defendant has disclosed a number of witnesses who would testify that they had contact with Mr. Walsh and had evidence from these contacts indicating that Mr. Walsh was the killer and not Ronald Bruce Bigger. According to the State, a number of those witnesses have recanted their statements. Apparently, Mr. Walsh has denied any involvement in the homicide.

Mr. Walsh was charged with numerous robberies and two carjackings between October 2, 2004 and December 29, 2004. All of the robberies were of convenience markets or other retail establishments. In some cases, a weapon was shown or implied and, in other cases, no weapon was shown or implied. In one case, Mr. Walsh displayed a knife. The carjackings occurred on October 15, 2004 and October 28, 2004. Both of these carjackings occurred at a retail place of business (a feed store and a gas station). The October

Sandi Simpson
Judicial Administrative Assistant

2-27-06

RULING

| Page: 2 | Date: March 1, 2006 | Case No: **CR20043995** |
|---|---|---|

15, 2004 carjacking occurred during the daytime hours and the Court does not have the information of the time of day that the October 28, 2004 carjacking occurred. The October 15, 2004 carjacking involved the display of a BB gun. No weapon was implied or displayed in the October 28, 2004 carjacking. In neither case were money nor valuables other than the vehicle taken from the victims. In both cases, the vehicles were discovered abandoned a few days later. Mr. Walsh pled guilty to all of the robberies and the two carjackings, which were charged as robberies.

There is no physical evidence connecting Mr. Walsh to the scene or to the Dr. Stidham's Lexus which was taken after his murder. The Lexus was discovered the following day abandoned at the Bellevue Apartments. The State contends that the Court should preclude evidence of third party liability of Mr. Walsh arguing that the evidence is not relevant and would only confuse the issues in this case.

### LEGAL ANALYSIS

In determining whether the Court should admit evidence of third-party culpability, the Court's "focus should be on 'the effect the evidence has upon the defendant's culpability' and the evidence 'need only tend to create reasonable doubt that the defendant committed the offense.'" *State v. Gibson*, 202 Ariz. 321, 323, 44 P.3d 1001, 1004 (2004), citing *Winfield v. United States*, 676 A.2d 1, 4 (D.C. 1996). To be relevant, the evidence need "only *tend* to create a reasonable doubt that the defendant committed the offense." *State v. Gibson, supra,* 202 Ariz. at 324. Once the Court determines evidence is relevant, the Court must further analyze the evidence the defendant seeks to introduce under Rule of Evidence 403 to determine whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice, confusion of issues or misleading of the jury. *Id.* The Court should not admit evidence of third-culpability if such evidence merely presents a suspicion or speculation regarding a class of persons who may have committed the crime. *State v. Dann*, 205 Ariz. 557, 569, 74 P.3d 231, 243 (2003).

The State further contends that if the Court does admit evidence of the third-party culpability as to Mr. Walsh, evidence of other offenses that he committed should be excluded under Rule of Evidence 404(b).

Sandi Simpson
Judicial Administrative Assistant

2-27-06

RULING

| | | |
|---|---|---|
| Page: 3 | Date:  March 1, 2006 | Case No:  **CR20043995** |

Rule of Evidence 404(b) provides that "evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith.  It may, however, be admissible for other purposes such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, or, absence of a mistake or accident."

     Most cases discuss the admissibility of other crimes evidence under Rule 404 pertain to other crimes of the defendant.  However, Rule 404(b) is not limited to an accused in a particular case.  There is no issue that Mr. Walsh committed numerous robberies and two carjackings from October 2004 through December 2004.  In his motion, without providing a basis for admission of these other crimes, the defendant contends that he should be allowed to present evidence of all these crimes.  Clearly, admission of evidence of the robberies would be admitted primarily, if not solely, for the purpose of showing that Mr. Walsh is a bad guy, who robbed many stores over a couple of months period of time, including during the time when Dr. Stidham was killed.  Not only are these robberies not relevant, they are offered for an improper purpose and any probative value of the robberies is substantially outweighed by confusion of the issues.  *State v. Gibson, supra.*  Even without applying Rule 404(b) to Walsh crimes in connection with third party culpability, under Rule 403, the probative value of the robberies substantial outweighs the danger of confusion of the issues.  *State v. Gibson, supra*, 202 Ariz. At 324.

     IT IS THEREFORE ORDERED excluding evidence of the robberies committed by Walsh.

     With respect to the carjackings committed by Mr. Walsh, there are both similarities and dissimilarities between the events in this case.  The similarities include that only the vehicle was taken from the victim and the vehicles were discovered abandoned within a few days.  There are also dissimilarities including that a knife was used and the victim killed the instant offenses.  The Walsh carjackings occurred at open businesses and at least one during daylight hours.  Nonetheless,

     THE COURT FINDS that evidence that Walsh committed two carjackings is relevant and admissible to prove motive and identity.

Sandi Simpson
Judicial Administrative Assistant

2-27-06

# RULING

Page: 4                          Date:  March 1, 2006                  Case No:  **CR20043995**

THE COURT FINDS that while there is a dispute in the evidence as to what Mr. Walsh told several witnesses, this evidence tends to raise reasonable doubt as to the guilt of the defendant.  Furthermore, in addition to evidence of statements of Mr. Walsh to others and alleged observation by others of Mr. Walsh after the murder of Dr. Stidham, defendant may also introduce evidence of two of the carjackings committed by Mr. Walsh on October 15, 2004 and October 28, 2004.

IT IS THEREFORE ORDERED denying in part and granting in part the State's Motion to Preclude Third-Party Defense re: Dennis Walsh.

HON. NANETTE WARNER

cc:     Hon. Nanette Warner
        Syliva Lafferty, Esq.
        Richard Platt, Esq.
        Brick Storts, Esq.
        Jill Thorpe, Esq.
        Harold Higgins, Esq.
        Maria Davila, Esq
        Dave Ricker, Community Relations Coordinator

Sandi Simpson
Judicial Administrative Assistant

*2-27-06*

# ROA-
# ITEM 541



FILED
PATRICIA A. NOLAN
CLERK, SUPERIOR C
06 MAR 23 AM 8: 36

ARIZONA SUPERIOR COURT, PIMA COUNTY

JUDGE: HON. NANETTE WARNER   BY: R. ST. GERMAINE, DEPUTY   CASE NO.   **CR20043995**

DATE:         March 22, 2006

STATE OF ARIZONA

VS.

BRADLEY A. SCHWARTZ

---

## R U L I N G

UNDER ADVISEMENT RULING on defendant Schwartz' Motion for a Mistrial.

Defendant has moved for a mistrial based on the testimony of witness Lourdes Lopez regarding her pending indictment. Ms. Lopez testified that initially she lied to the Drug Enforcement Administration (DEA) and then later met with the U.S. Attorney, a DEA representative while her attorney was present and told the truth. When asked about why she left the Pima County Attorney's Office, she stated she did so "because I knew that I was going to be indicted."

An earlier witness, Stefanie Nagel, testified about meeting the defendant at the federal courthouse where they were providing urine samples.

In connection with the defendant's motion to exclude prior bad acts of Dr. Schwartz, the Court ruled on December 2, 2005, that, "the State is precluded from introducing evidence that defendant Schwartz was the subject of a DEA investigation, was indicted on federal charges and entered into a plea agreement." That order was later modified to allow evidence that there had been a DEA investigation to allow for questioning of Lourdes Lopez, Laurie Espinosa and the defendant as to the veracity of their statements to the DEA during its investigation. Although the defendant sought to introduce evidence of Ms. Espinoza's conviction arising out of the federal charges, the Court ordered, on January 20, 2006, that the defendant was prohibited from introducing evidence that Laurie Espinosa was convicted of a misdemeanor in the federal criminal case. The Court made no explicit ruling on mention of the indictment as to Ms. Lopez or Ms. Espinosa.

Sandi Simpson
Judicial Administrative Assistant

*3-22-06*

RULING

| | | |
|---|---|---|
| Page: 2 | Date:  March 22, 2006 | Case No:  **CR20043995** |

The intention of the Court's rulings were to preclude introduction of evidence that the defendant had been indicted on federal charges and the outcome of the federal charges.

In this case, Ms. Lopez testified that she believed that she was going to be indicted.  No evidence has been introduced that she or the defendant were indicted nor has there been any evidence presented to the jury concerning the outcome of the federal case.

Further, the response of Ms. Lopez was not one that the State sought to elicit, but was the result of non-leading questions.

THE COURT THEREFORE FINDS that there is no misconduct on behalf of the State in its questioning of Ms. Lopez.

Inasmuch as there has been no violation of the Court order and no evidence has been introduced that the defendant was charged with any criminal offense and, in view of the Court ruling below, that there will be no evidence that Ms. Lopez or Ms. Espinosa was ever indicted or convicted of a criminal offense,

IT IS ORDERED DENYING the Motion for Mistrial.

IT IS FURTHER ORDERED that the State and defendant are forthwith precluded from introducing evidence that the Ms. Lopez or Ms. Espinoza was the subject of a federal indictment or the outcome of any federal criminal charges.

HON. NANETTE WARNER

cc:    Hon. Nanette Warner
       Syliva Lafferty, Esq.
       Richard Platt, Esq.
       Brick Storts, Esq.
       Jill Thorpe, Esq.
       Harold Higgins, Esq.
       Maria Davila, Esq
       Dave Ricker, Community Relations Coordinator

Sandi Simpson
Judicial Administrative Assistant

*3-22-06*

# ROA-ITEM 554



FILED
PATRICIA A. NOLAND
CLERK, SUPERIOR COURT

06 MAR 28  AM 8: 39

MAR 2 8 2006

ARIZONA SUPERIOR COURT, PIMA COUNTY *06 MAR 28*

JUDGE: HON. NANETTE WARNER     BY: R. ST. GERMAINE. DEPUTY     CASE NO.     **CR20043995**

DATE:         March 27, 2006

STATE OF ARIZONA

VS.

BRADLEY A. SCHWARTZ

---

## R U L I N G

UNDER ADVISEMENT on *Frye* hearing.

The Court has read the defendant's Motion for *Frye* Hearing and Motion to Preclude, considered the evidence admitted at the hearing on March 24, 2006, and considered arguments of counsel.

THE COURT FINDS as follows:

### FACTUAL BACKGROUND

The State has charged defendant Bradley A. Schwartz with first degree murder and conspiracy to commit first murder contending that defendant Schwartz hired Ronald Bruce Bigger to kill Dr. David Brian Stidham. Dr. Stidham was found murdered outside his office on October 5, 2004. As part of the investigation, the State took swabs for the purpose of DNA testing from a number of items, including the vehicle belonging to the victim. The State also took buccal cell swabs for DNA testing from defendant Schwartz, Ronald Bruce Bigger, and Dennis Walsh. DNA was available from the victim.

The State will be offering the testimony of Curtis Rheinbold that he performed autosomal short tandem repeat (STR) testing on the samples. The State will further present evidence that Lorraine Heath performed Y-STR testing on the available samples. Mr. Rheinbold will testify that at least one of the unknown samples he tested was a mixture of two males with a major contributor matching the DNA of

Sandi Simpson
Judicial Administrative Assistant

*3-27-06*

RULING

| | | |
|---|---|---|
| Page: 2 | Date:  March 27, 2006 | Case No:  **CR20043995** |

David Brian Stidham.  With respect to the minor contributor, Mr. Rheinbold will testify that markers at four loci matched those of Bigger.

Y-STR testing only looks for the presence of markers on the male specific regions of the chromosome.  It has been found to be useful in testing where there is a mixed sample of male and female DNA or a sample indicating the presence of at least one male where a small quantity of DNA is available. Ms. Heath will testify that there were two contributors to the DNA with Y-STR testing and that the major contributor matched that of David Brian Stidham.  With respect to the minor contributor, Ms. Heath identified nine loci which matched loci also found on the DNA of Bigger.  Thus, Mr. Rheinbold and Ms. Heath will both testify that based on the tests they performed, they could not exclude Ronald Bruce Bigger as the minor contributor.  Both witnesses are expected to offer testimony as to the frequency of the profile of the minor contributor on the STR and Y-STR appearing randomly in the general population.

Additionally, the State seeks to admit testimony by Lorraine Heath combining the frequency results of the STR and Y-STR analysis for the purpose of computing the random statistical probability of the results of the STR found by Mr. Rheinbold and the Y-STR results from Ms. Heath's analysis appearing in the general population.

The defendant objects to the testimony of Ms. Heath on test results of the random combined statistical probability of the Y-STR and STR results.

At the *Frye* hearing, the State offered the testimony of Dr. Bruce Budowle.  Dr. Budowle has an impressive resume and background working with DNA, including DNA in the forensic settings.  He was the principle author in an article which appeared in *Forensic Science International*, Volume 150, published May 2005 and entitled, "Twelve short tandem repeat loci Y chromosome haplotyes: Genetic analysis on populations residing in North America." This article was received by the journal for review on July 7, 2004. After peer review by three or four people, minor revisions were made by the authors and it was resubmitted

Sandi Simpson
Judicial Administrative Assistant

*3-27-06*

RULING

| Page: 3 | Date:  March 27, 2006 | Case No:  **CR20043995** |

in January 2005 and accepted for publication January 21, 2005.  Dr. Budowle is unaware of any criticism of the article or work in the article since its publication.

Dr. Budowle testified that combining of the random probabilities of autosomal STR and Y-STR results is a common statistical analysis using accepted statistical techniques of chi-square and the contingency table test. He testified that the random probability should first be calculated on the autosomal STR and then independently on Y-STR.  The two probabilities are then multiplied and a calculation made for the combined probability of the person with the autosomal STR and the Y-STR results appearing randomly in the population.

## <u>LEGAL ANALYSIS</u>

Arizona has adopted and reaffirmed the standard set forth in *Frye v. United States*, 293  F.1013, (D.C. Cir. 1923) as a test for determining the admissibility of scientific evidence. *Logerquist v. McVey*, 196 Ariz. 470, 1 P.3d 113 (2000).  Under the *Frye* test, prior to the admission of certain scientific testimony, the court must hold a hearing to determine whether the scientific principal is "sufficiently established to have gained general acceptance in the particular field in which it belongs." 293 F. at 1014.  The court in *Frye* acknowledge that "just when a scientific principle or discovery crosses the line between experimental and demonstrable stage, is difficult to define." *Id.*  The count further acknowledge that "somewhere in the twilight zone evidential force of the principle must be recognized . . . ." *Id.*

Our courts have held that the *Frye* test should be applied in determining the admissibility of statistical analysis of DNA testing. *State v. Johnson*, 186 Ariz. 323, 922 P.2d 294 (1996)[1].  In *State v.

---

[1]In *State v. Hummert*, 188 Ariz. 119, 933 P.2d 1187 (1997), the Supreme Court noted that *Frye* did not apply to the testimony of an expert witness was based on that expert's "own work and experience," citing Arizona Rules of Evidence 702 and 703.  In this case, Ms. Heath's testimony would be based on the work of Dr. Budowle's and, perhaps, others in the field.

Sandi Simpson  
Judicial Administrative Assistant

RULING

Page: 4                    Date:  March 27, 2006                    Case No:  **CR20043995**

*Johnson*, the court allowed the expert to testify as to the frequency of identified alleles could be expected to appear in the general population.  186 Ariz. at 333.

In its opinion, the Arizona Supreme Court finds that the "random and representativeness" of the database used was "generally accepted in the relevant scientific community"; thus, the expert witness could opine as to the frequency of the match occurring in the general population.  In coming to this conclusion, the court relied upon the National Research Counsel (NRC) 1992 Report, discussing the modified ceiling method procedures for the purpose of determining DNA probability.  Citing *U.S. v. Porter*, 1618 A.2d 629, 643 (D.C. App. 1992), the court noted that the NRC, "is a distinguished cross section of the scientific community. . . .  Thus, the committee's conclusion regarding the reliability of DNA typing, specifically RFLP analysis,  and the proffer is a conservative method for calculating probability estimates can be easily equated with general acceptance of those methodologies in chief in the scientific community."  186 Ariz. at 334.

In this case, Dr. Budowle's analysis for computing the random probability of the combined analysis is the first to be published and has been available for scientific community analysis for less than one year.  While the Court understands the use of this scientific principle in settings other than the courtroom, where a person's liberty is at stake, the courts are required to undertake the gatekeeping function to assure that the principle to which the witness is testifying is "generally accepted in the relevant scientific community."  Thus, although there does appear to be a sound scientific basis for Dr. Budowle's analysis,

THE COURT FINDS that one article (albeit authored by the foremost experts in the field), does not establish the combined DNA analysis of random probabilities to be generally accepted in the scientific community.  Before it can be considered to be generally acceptable, the Court would look to the adoption of this method by the NRC or similar group, replication of Dr. Budowle's work by other scientists or a sufficient passage of time for the work to be scrutinized by the scientific community to assure that it has reached the level of general acceptance in the scientific community.

Sandi Simpson
Judicial Administrative Assistant

*3-27-06*

RULING

Page: 5                    Date:  March 27, 2006                    Case No:  **CR20043995**

## ORDERS

IT IS THEREFORE ORDERED granting the defendant's Motion to Preclude.

IT IS FURTHER ORDERED precluding Lorraine Heath from testifying as to the combined probabilities of the results of the autosomal STR and Y-STR analysis.

HON. NANETTE WARNER

cc:     Hon. Nanette Warner
        Syliva Lafferty, Esq.
        Richard Platt, Esq.
        Brick Storts, Esq.
        Maria Davila, Esq
        Jill Thorpe, Esq.
        Harold Higgins, Esq.
        Dave Ricker, Community Relations Coordinator
        *Under Advisement Clerk*

Sandi Simpson
Judicial Administrative Assistant

*3-27-06*

# ROA-ITEM 562

ROBERT CARTER OLSON
PINAL COUNTY ATTORNEY (00003800)
Richard T. Platt (87188) Chief Deputy
Sylvia Lafferty (87183) Deputy
P.O. Box 887
Florence, AZ 85232-0887
(520) 866-6271

FILED

06 MAR 29 PM 3: 02

FAT... ...LAND
CLER... ...RIOR COURT
BY _____
DEPUTY

Attorneys for the State

IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

IN AND FOR THE COUNTY OF PIMA

| | |
|---|---|
| THE STATE OF ARIZONA, | No. CR-2004-3995 |
| Plaintiff, | **MOTION TO PRECLUDE** |
| v. | |
| BRADLEY SCHWARTZ | (Assigned to the Honorable |
| Defendants. | Nanette Warner) |

The State of Arizona, by and through its deputy undersigned, hereby moves this Court to preclude defendant Schwartz from attempting to impeach the credibility of Lourdes Lopez by the examination of Paul Skitzki, as to whether Paul Skitzki will contradict Lourdes Lopez over a statement she allegedly made to him prior to the murder of Dr. David Brian Stidham. This Motion is supported by the Memorandum of Points and Authorities, as more fully set forth herein.

RESPECTFULLY SUBMITTED this 27th day of March, 2006.

ROBERT CARTER OLSON
PINAL COUNTY ATTORNEY

By _____
Richard T. Platt
Chief Criminal Deputy County Attorney

1

## MEMORANDUM OF POINTS AND AUTHORITIES

**FACTS:**

During the cross-examination of Lourdes Lopez, defense counsel asked her if she ever told anyone about the threats that the defendant made against the victim, Dr. Stidham.  Ms. Lopez responded by saying that she had mentioned the threats to two other people: Jeff Fairbanks and Paul Skitzki.  She testified that she told Paul Skitzki sometime after she broke off her engagement with the defendant, but prior to the murder of Dr. Stidham.

The defendant has noticed Paul Skitzki as a witness in his defense case.  It is anticipated that the defendant will ask this witness if he had a conversation with Lourdes Lopez, prior to the murder of Dr. Stidham, where Lourdes told him of the threats that defendant made about Dr. Stidham.  Mr. Skitzki is anticipated to answer the question by saying 'no'.  The use of this statement is to argue that Lourdes Lopez is therefore untruthful and she cannot be believed.

**LAW:**

The law of relevance is stated in Rule 401, Arizona Rules of Evidence.  The Rule holds: ""Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  This rule has been interpreted by the Arizona courts: "The test for relevance is whether the offered evidence tends to make the existence of any fact in issue more or less probable."  *State v. Fulmanente*, 193 Ariz. 485, 502, 975 P.2d 75, 92 (1999).  "Evidence is relevant if it has any basis in reason to prove material fact in issue."  *State v. Kennedy*, 122 Ariz. 22, 25, 592 P.2d 1288, 1291 (App. 1979).  "A

2

fundamental requirement for admission of evidence is that it be relevant.   To be relevant, evidence must have "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *State v. Fisher*,   141 Ariz. 227, 244, 686 P.2d 750, 767 (1984), certiorari denied 469 US 1069, denial of post conviction relief reversed in part 152 Ariz. 116, 730 p.2d 825, appeal after new trial 176 Ariz. 69, 859 P.2d 179.

Here, how does the testimony of Paul Skitzki become relevant in this trial just because he has a different recollection as to the date of the conversation with Lourdes Lopez than she what has testified about. Is it then used to attempt to impeach the credibility of Lourdes Lopez? If so, then:

Rule 608(b), Arizona Rules of Evidence, states:

"Specific instances of conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of a crime as provided in Rule 609, may not be proved by extrinsic evidence.   They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness' character for truthfulness, or concerning the character of another witness as to which character the witness being cross-examined has testified."

The rule limits impeachment of a witness' credibility when the evidence is about a specific instance of conduct where the conduct did not amount to a conviction of a crime.   The Arizona Supreme Court, in its decision of *State v. Woods,* 141 Ariz. 446, 687 P.2d 1201 (1984), had the opportunity to interpret Rule 608.   In *Woods,* the defendant was charged with first degree murder and armed robbery.   He attempted to impeach a witness through examination for an alleged theft that the witness was never convicted of.   The Court reasoned:

"Arizona was aligned with the minority of jurisdictions prohibiting the use of specific acts of misconduct on cross-examination of a witness, unless the witness had been convicted of a crime based on that misconduct." . . .

"Protection of a witness against the potential that he will be questioned about all his past conduct is vital to encourage witnesses to appear and give testimony, as well as to protect them from the prejudicial effect that such allegations, even if denied, carry to the jury."

141 Ariz. at 450, 687 P.2d at 1205.

The *Woods* Court went on to hold:

"We hold, therefore, that under Rule 608 (b) the trial court has discretion to allow cross-examination of a witness about his specific acts of misconduct, if they are probative of truthfulness, even though the witness has not been convicted of any crime in connection with those acts. One limitation on this discretion is that the use of such acts is limited to cross-examination of the witness; the acts may not be proved by extrinsic evidence. Additionally, the utility of the evidence must be weighed by the trial judge against the possibility of prejudice under Rule 403, Ariz.R.Evid."

*State v. Woods,* 141 Ariz.446, 450, 687 P.2d 1201, 1205.

Here, Lourdes Lopez has not been convicted of any crime in connection to any statements that she made to Paul Skitzki in reference to the defendant. Pursuant to Rule 608 and 403, Arizona Rules of Evidence, and the reasoning of the Supreme Court, the alleged acts of misconduct should be precluded from cross-examination by the defendant.

## CONCLUSION

Based upon the foregoing, the State requests this Court to grant the above stated Motion.

4

RESPECTIVELY SUBMITTED on this 27th day of March, 2006.

ROBERT CARTER OLSON
PINAL COUNTY ATTORNEY

By _____
Richard T. Platt
Chief Criminal Deputy County Attorney

A copy of the foregoing was
Mailed/ delivered on March 27, 2006, to:

Hon. Nanette Warner
Judge of the Superior Court
Pima County Superior Courthouse
110 West Congress
Tucson, AZ 85701

Brick P. Storts, III
Barton & Storts. P.C.
271 N. Stone
Tucson, AZ 85701

Maria Davila
Attorney At Law
100 N. Stone, Ste 1102
Tucson, AZ 85701

By _____

5

# ROA-ITEM 590

**BARTON & STORTS, P.C.**
271 N. Stone Avenue
Tucson, Arizona 85701
(520) 882-2802
(520) 882-5785 (Fax)
Brick P. Storts, III
Pima County Computer No. 55508
Arizona State Bar No. 004507

FILED

06 APR 11  PM 2: 39

PATRICIA A. NOLAND
CLERK SUPERIOR COURT
BY _____
        DEPUTY

Attorney for Defendant, BRADLEY A.  SCHWARTZ

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
## IN AND FOR THE COUNTY OF PIMA

| | |
|---|---|
| STATE OF ARIZONA, | Case No. CR2004-3995 |
| Plaintiff, | Hon.  Nanette M.  Warner |
| vs. | Div. 20 |
| BRADLEY A.  SCHWARTZ, | **NOTICE OF** |
| Defendant. | **DISCLOSURE** |

COMES NOW the Defendant, BRADLEY A.  SCHWARTZ, by and through counsel undersigned, and hereby notices his disclosure of a surrebuttal witness that will be called on the Defendant's case.

D.E.A Agent Dave Wickey will be called as a surrebuttal witness to impeach the testimony of the State's witness, Lourdes Lopez.  Agent Wickey will be testifying pursuant to the DEA reports he prepared with Marcus Brown on October 30, 2001, and July 19, 2002.  His testimony will impeach the testimony of Ms.  Lopez at the instant trial, as to her knowledge of the D.E.A. investigation.  The State is not prejudiced by the disclosure of this surrebuttal witness as this is

1

information that has been available to the State since the inception of this case and was disclosed to the Defendant on or about March 14, 2005.

  DATED this ⁄⁄ day of April 2006.

      BARTON & STORTS, P.C.


      Brick P. Storts, III
      Attorney for Defendant SCHWARTZ


Copy of the foregoing mailed/delivered
this ⁄⁄ day of April 2006, to:

Sylvia Lafferty
Pinal County Attorney's Office
P.O. Box 887
Florence, AZ 85232

Jill Thorpe
177 North Church, #305
Tucson, AZ 85701
Attorney for co-defendant Bigger

# ROA-ITEM 617



MAR 0 1 2006

FILED
PATRICIA A. NOLAND
CLERK, SUPERIOR COURT
April 13, 2006 (8:58 a.m.)
4-28  By: J.Clark

ARIZONA SUPERIOR COURT, PIMA COUNTY

JUDGE: HON. NANETTE WARNER

COURT REPORTER: Denise Gonzales/Gail Vinson/
                              Anne Bouley

Courtroom: 678

CASE NO.   **CR20043995**

DATE:        April 12, 2006

STATE OF ARIZONA

VS.

BRADLEY ALAN SCHWARTZ  (2)

Sylvia Lafferty and Richard Platt

Brick Storts and Maria Davila

---

## M I N U T E   E N T R Y

JURY TRIAL (Day Twenty-Four):

Defendant present, in custody.

Mr. Storts informs the Court of some resolution concerning the testimony of Dr. Winston: The State has agreed that the Court inform the jury that the testimony is stricken.

Ms. Lafferty advises that the State is acceding to the defense request that Dr. Winston's testimony of yesterday, to the extent that he mentions the two recent cases, be stricken.

The Court will so instruct the jury and requests a written stipulation of counsel as to the wording to be presented to the jury.

Mr. Storts informs the Court that the defense will not be raising the third-party culpability defense of Dennis Walsh being the perpetrator of the crime and states the basis for the defense decision.

As to the State's motion to preclude Mr. Skitzki from testifying and the State's oral motion preclude Mr. Wickey from testifying,

Messrs. Platt and Storts argue to the Court.

The Court defers ruling on the motions at this time.

12:09 p.m.  Court stands at recess until 1:15 p.m. this day.

1:26 p.m.  Same counsel present.  Defendant present, in custody.  Gail Vinson reporting.

IT IS ORDERED granting the motions to preclude Mr. Skitzki and Mr. Wickey.

J.Clark
Deputy Clerk

*10-4-05*

# MINUTE ENTRY

Page: 2                    Date:   April 12, 2006              Case No:   **CR20043995**

The Court notes that counsel have been provided with portions of the transcript of Dr. Winston's testimony.

Court and counsel confer regarding how best to inform the jury of the stricken testimony.

Mr. Storts is directed to prepare a draft written statement to be read to the jury.

State's Exhibit 37-A, being the original pages of State's Exhibit 37 which have been redacted per Court order to delete Social Security numbers, is marked for identification.

The Court confirms that counsel have reviewed State's Exhibit 37 in its present form.

1:32 p.m.  In the presence of the jury,

Continuing for the defense,

Mr. Wraxall, previously sworn, resumes the stand and is further examined by Mr. Storts and cross-examined by Ms. Lafferty.  An appropriate juror question is posed to the witness by the Court.

Defendant's Exhibit EQ, being easel chart (Wraxall) 4/12/06, is identified.

Defendant's Exhibit CW, previously identified, is admitted.

Defendant's Exhibit ER, being easel chart (Wraxall) 4/12/06, is identified.

Defendant's Exhibit ED, previously identified, is admitted.

Defendant's Exhibit ES, being copy of Az. DPS Crime Lab/DNA Unit Y-STR Summary Sheet pgs. 1-2, is identified and admitted.

Leo Duffner is sworn and examined by Ms. Davila.

Defendant's Exhibit ET, being copy of aerial photo, is identified.

Defendant's Exhibits EU, EV and EW, each being color photo on posterboard 8x10, are identified.

Defendant's Exhibits EF, EG, EH, EI AND E J, previously identified, are admitted.

Defendant's Exhibits EV, EU and EW, previously identified, are admitted.

Defendant's Exhibit ET, previously identified, is admitted.

After a brief recess, Anne Bouley is now reporting.

Leo Duffner, previously sworn, is further examined by Ms. Davila and is cross-examined by Ms. Lafferty.

J.Clark
Deputy Clerk

*10-4-05*

# M I N U T E   E N T R Y

Page: 3                    Date:   April 12, 2006              Case No:  **CR20043995**

Dr. Parham Morgan, present by telephone, is sworn and examined by Ms. Davila.

The Court reads to the jury the order concerning Dr. Winston's testimony of yesterday.

Det. Paul Montano, previously sworn, resumes the stand and is examined by Mr. Storts.

Defendant's Exhibit EX, being copies of color photos, is identified.

Defendant's Exhibit EY, being copy of color photos, is identified.

Defendant's Exhibit EX, previously identified, is admitted.

Det. Jill Murphy, previously sworn, resumes the stand and is examined by Mr.. Storts and cross-examined by Ms. Lafferty.

4:55 p.m.  The jury is admonished and excused until 1:30 p.m. on April 13, 2006.

Court and counsel confer regarding trial scheduling.

Counsel are directed to return tomorrow at 11:00 a.m. for motions argument.

Defendant's presence is waived for the 11:00 a.m. hearing; he is to be present at 1:30 p.m. for trial.

Filed in court: Stipulation.


cc:
Hon. Nanette Warner
Pinal County Attorney - S. Lafferty/R. Platt
Brick Storts, Esq.
Maria Davila, Esq.


J.Clark
Deputy Clerk

*10-4-05*